J-A18004-16

2016 PA Super 225

| | |
|---|---|
| IN THE INTEREST OF: A.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.A. | No. 1931 MDA 2015 |

Appeal from the Dispositional Order Entered September 28, 2015
In the Court of Common Pleas of Dauphin County
Juvenile Division at No(s): CP-22-JV-0000144-2015

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STEVENS, P.J.E.[*]

OPINION BY BENDER, P.J.E.: **FILED OCTOBER 18, 2016**

Appellant, A.A. (a minor), appeals from the dispositional order entered following her adjudication of delinquency on charges of driving under the influence (DUI), possession of a controlled substance, possession of drug paraphernalia, and a traffic violation (disregarding traffic lanes). On appeal, Appellant solely challenges the juvenile court's denial of her motion to suppress evidence. After careful review, we affirm.

The juvenile court summarized the facts and procedural history of Appellant's case, as follows:

> On January 9, 2015, Sergeant Christopher Still (hereinafter "Sergeant Still") of the Halifax Area Regional Police Department was on routine traffic patrol in the area of Market and North Second Streets. Sergeant Still observed a black sedan straddling the center yellow lines and decided to follow the vehicle. While following the vehicle, he conducted a check on the registration and found that it was expired. Sergeant Still then conducted a traffic stop on the vehicle based on the expired registration.

---

[*] Former Justice specially assigned to the Superior Court.

Sergeant Still testified that at the time of the traffic stop, he identified the driver as Appellant, and a passenger … as Kyle Lewis (hereinafter "Mr. Lewis").[1] When Sergeant Still requested the vehicle information, he observed Appellant to be confused and her movements to be sluggish. Appellant provided Sergeant Still with a driver's license and an expired registration card, but failed to provide proof of financial responsibility. While completing a citation for the expired registration and a warning for the failure to provide proof of financial responsibility, Sergeant Still observed Mr. Lewis making furtive movements around the passenger area. He also observed Mr. Lewis briefly open the passenger door and re-close it. Sergeant Still returned to the vehicle and issued Appellant the citation and warning. At that time, Sergeant Still testified that he smelled an odor of marijuana coming from the interior of the vehicle. After returning Appellant's documents, Sergeant Still bid Appellant goodnight and broke contact.

Sergeant Still subsequently re-engaged Appellant and began to ask if there was anything illegal in the car that he should know about. Appellant cut him off and said "no" and then asked if Sergeant Still wanted to search the vehicle. Sergeant Still responded that he would like to search the vehicle. He testified that Mr. Lewis then voluntarily stated that there was a marijuana pipe in the car and that the two of them had smoked marijuana prior to driving.

At this point, Sergeant Still had Appellant step out of the vehicle. Upon [her] exiting, Sergeant Still observed a light green pill lying on the driver's seat. Appellant was directed to wait near the rear of the vehicle until back-up arrived. Mr. Lewis was then asked to step out of the vehicle. In conducting a pat-down for officer safety, Sergeant Still discovered a BB gun in Mr. Lewis' waistband. Mr. Lewis was subsequently handcuffed and the BB gun [was] removed.

Once Appellant and Mr. Lewis were out of the vehicle, Sergeant Still conducted a search of the vehicle. He recovered a small pill bottle in the center of the door on the passenger side

_____

[1] Sergeant Still testified that Appellant's driver's license informed him that she was 17 years old at the time of the traffic stop. N.T. Suppression Hearing, 8/6/15, at 21.

that contained some marijuana residue, the pill from the driver's seat, and a marijuana pipe in a leopard-print case in Appellant's handbag. When asked what the pill was, Appellant responded that it was Klonopin, and admitted to taking at least one that night as well. Mr. Lewis claimed that the pill bottle was his.

Following the search of the vehicle, Sergeant Still administered two tasks of the field sobriety test on Appellant, the Horizontal Gaze Nystagmus and the one-legged stand. Appellant failed the one-legged stand, and provided six clues to impairment through the Horizontal Gaze Nystagmus test. Appellant was subsequently placed under arrest. While at the Dauphin County Booking Center, a blood test was administered on Appellant.

…

On April 29, 2015, a delinquency petition was filed alleging that [Appellant] committed the delinquent acts of DUI - Impaired Ability[1], Unlawful Possession of a Controlled Substance[2], Unlawful Possession of Drug Paraphernalia[3], Disregard of Traffic Lanes[4], and Driving Unregistered Vehicle[5]. [Appellant] filed an Omnibus Pre-Trial Motion to Suppress Evidence on July 20, 2015. A suppression hearing was held before this [c]ourt on August 6, 2015. At the conclusion of the hearing, the [c]ourt directed the parties to file briefs in support of their position within two (2) weeks. On August 24, 2015, this [c]ourt issued an Order denying [Appellant's] Motion to Suppress.

[1] 75 Pa.C.S.A. § 3802(d)(2).
[2] 35 [P.S.] § 780-113(a)(16).
[3] 35 [P.S.] § 780-113(a)(32).
[4] 75 Pa.C.S.A. § 3309(1).
[5] 75 Pa.C.S.A. § 1301(a).

An Adjudication and Disposition Hearing was held on September 28, 2015. At the conclusion of the adjudication hearing, the [c]ourt found that Count 1 (DUI - Impaired Ability), Count 2 (Possession of a Controlled Substance), Count 3 (Possession of Drug Paraphernalia), and Count 4 (Disregard Traffic Lanes) were substantiated. Count 4 (Driving Unregistered Vehicle) was changed to DUI - Controlled Substance or Metabolite[6]. [Appellant] was adjudicated delinquent and found in need of treatment, supervision, or

rehabilitation. She was placed on probation and her driver's license was suspended for one (1) year.

        [6] 75 Pa.C.S.A. § 3802(d)(1).

        [Appellant] filed a Notice of Appeal of the Order of September 28, 2015 adjudicating [her] delinquent…. On October 29, 2015, this [c]ourt directed [Appellant] to file a [Pa.R.A.P. 1925(b)] Concise Statement of [Errors] Complained of on Appeal….

Juvenile Court Opinion (JCO), 12/29/15, at 1-4 (unnumbered).

Appellant timely complied with the court's order to file a Rule 1925(b) statement, and the court subsequently issued a responsive opinion. Herein, Appellant presents one question for our review:

Whether the [juvenile] court erred in failing to suppress evidence obtained as the result of an illegal detention unsupported by probable cause, reasonable suspicion, or any articulable basis in violation of the Fourth Amendment of the United States Constitution, and Article 1, Section 8 of the Pennsylvania Constitution?

Appellant's Brief at 5 (unnecessary capitalization and emphasis omitted).

We begin by noting our standard of review:

When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1252–53 (Pa. Super. 2008) (*en banc*) (quoting *Commonwealth v. Mistler,* 912 A.2d 1265, 1269–70 (Pa. 2006)) (internal citations and quotation marks omitted).

In this case, Appellant does not contest the validity of Sergeant Still's initial traffic stop of her vehicle.  Rather, she presents two distinct claims related to the sergeant's questioning of her after he 'broke contact' and then re-engaged her in questioning.  First, Appellant argues that Sergeant Still terminated the initial traffic stop, and that his re-initiating contact with her amounted to a second investigative detention.  Second, Appellant contends that Sergeant Still lacked reasonable suspicion to justify that second detention.  We will address each of these claims in turn.

We begin by recognizing that the Commonwealth does not dispute that Appellant was detained when Sergeant Still re-initiated contact with her. *See* Commonwealth's Brief at 9.  The juvenile court also agrees that Appellant was detained throughout her interaction with Sergeant Still, including when she gave him consent to search her vehicle.  *See* JCO at 6 (unnumbered).

We ascertain no legal error in the court's conclusion that Appellant was subjected to a second investigative detention.  Sergeant Still testified at the suppression hearing that he "issued [Appellant] [a] citation and briefly broke contact with [her] by bidding her a good night."  N.T. Suppression Hearing

at 7.[2] Sergeant Still then "reengaged [her] in conversation and asked her … if there was anything illegal in the car that [he] should know about." *Id.* Sergeant Still also testified that the lights on his police cruiser were activated throughout the entirety of his interaction with Appellant. *Id.* at 21. Under these circumstances, a reasonable person in Appellant's position would not have believed that she was free to leave. Therefore, we conclude that Appellant was subjected to a second investigative detention. *See Commonwealth v. Moyer*, 954 A.2d 659, 665 (Pa. Super. 2008) (*en banc*) ("[W]hen an individual has been subjected to a valid detention and the police continue to engage that person in conversation, the citizen, having been in an official detention, is less likely to understand that he has the right to refuse to answer questions or a search.") (emphasis omitted); *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa. Super. 2005) ("[W]here the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest.").

We must next assess whether Sergeant Still possessed reasonable suspicion to conduct that second detention of Appellant.

---

[2] The sergeant also stated at one point during the hearing that he told Appellant "she was free to go[.]" N.T. Suppression Hearing at 22.

A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. **Commonwealth v. Cook**, 558 Pa. 50, 735 A.2d 673, 676 (1999). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." **Id.** In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. **In re D.M.,** 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." **Cook**, 735 A.2d at 676 (quoting **Terry v. Ohio**, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Cook**, 735 A.2d at 676.

**Kemp**, 961 A.2d at 1255 (quoting **Commonwealth v. Rogers**, 849 A.2d 1185, 1189 (Pa. 2004)).

Here, in contending that Sergeant Still lacked reasonable suspicion to justify her second detention, Appellant relies on our decision in **Commonwealth v. Nguyen**, 116 A.3d 657 (Pa. Super. 2015). In that case, a three-judge panel of this Court stated that "[w]here the investigative detention at issue follows a lawful traffic stop, the officer must demonstrate cause for suspicion after the end of the initial stop, and independent of any basis on which he conducted the prior stop." **Id.** at 668 (quoting **Jones**, 874 A.2d at 117). Appellant avers that under this rule, Sergeant Still was required to formulate *new* reasonable suspicion - based on facts and circumstances wholly separate from anything that he observed during the traffic stop - to justify her second detention. Because Sergeant Still did not

- 7 -

articulate any new facts learned, or observations made, in the time-period between when he terminated the traffic stop and when he re-engaged Appellant, she maintains that he lacked reasonable suspicion to support the second detention.

In response, the Commonwealth argues that our reasonable suspicion assessment must include all of the facts and circumstances known to Sergeant Still, including his observations made *before* he terminated the traffic stop. In support of its position, the Commonwealth relies on this Court's *en banc* decision in **Kemp**. Briefly, in that case, a state trooper stopped a vehicle driven by Kandice Kyles, and in which Kemp was a passenger. **Kemp**, 961 A.2d at 1250. During the course of the stop, the trooper made various observations that, based on his experience, led him to suspect that Kemp and Kyles were trafficking narcotics.[3] **Id.** at 1251. At several points throughout the interaction, the trooper told Kyles and/or Kemp that they were free to leave, but then re-initiated contact and questioned them. **Id.** at 1251-52. Ultimately, after one such re-engagement, Kemp gave the trooper consent to search the car, which revealed a large quantity of marijuana in the trunk. **Id.** at 1252.

---

[3] For instance, the trooper observed that the vehicle contained numerous "masking agents" like air fresheners; Kemp and Kyles exhibited "evasive" behavior; and the trooper smelled an "odor of marijuana" emanating from inside the car. **Kemp**, 961 A.2d at 1251.

On appeal from the suppression court's denial of Kemp's motion to suppress, this Court first concluded that Kemp had been subjected to an investigative detention prior to providing consent to search the vehicle. *Id.* at 1254. We then addressed Kemp's argument "that once [the trooper] told Kyles and [Kemp] that they were free to leave, any facts garnered during the course of the valid vehicular stop could not be used to justify the continued detention." *Id.* at 1255. We began our assessment of this claim by acknowledging that Kemp's argument was supported by our prior decisions in *Commonwealth v. Ortiz*, 786 A.2d 261 (Pa. Super. 2001), and *Commonwealth v. Johnson*, 833 A.2d 755 (Pa. Super. 2003), a case which applied *Ortiz*. The *Kemp* panel summarized that, under *Ortiz* and *Johnson*, "the current law in Pennsylvania provides that once a police officer informs a defendant that he is free to leave after completing a valid traffic stop, any facts ascertained during that initial traffic stop are nullified and may not be utilized to support a continued detention, even if the facts discovered during the processing of the traffic stop support the existence of reasonable suspicion that the defendant is engaging in illegal activity." *Kemp*, 961 A.2d at 1257.

However, the *en banc Kemp* panel went on to expressly *overrule Ortiz* and *Johnson*, concluding that the rule applied in those cases was "improper for two distinct reasons." *Id.* at 1258. We explained:

> First, it is simply analytically inconsistent for a defendant to argue that "free-to-go" language does not step down the police interdiction from a seizure to a mere encounter, but that if

- 9 -

an officer does utter those words, all facts ascertained lawfully by the police officer during the traffic stop are erased for purposes of analyzing whether the continued detention was permissible. If the seizure achieved through the traffic stop never ended, and if thereby the defendant remained subject to a continuing detention when the traffic infraction was processed, then there is no reason why the facts observed by the officer during the constitutionally-proper traffic stop cannot be used to justify the continuation of the detention. If it is a continuing detention for the defendant, despite the free-to-go language, then by the same logic, it is a continuing detention for purposes of the police investigation.

Additionally, we believe that the approach adopted by **Ortiz** conflicts with appropriate constitutional analysis. "When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." **United States v. Arvizu**, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).… A totality-of-the-circumstances approach allows the court to consider all facts at the officer's disposal and does not require the court to disregard those adduced during a valid interdiction, which is, in the present case, the traffic stop. Indeed, routine constitutional analysis requires courts to utilize facts gathered during each escalating phase of a police investigation in determining whether police acted properly as the interaction between police and citizen proceeded towards an arrest.

**Kemp**, 961 A.2d at 1258-59 (some citations omitted).

We also noted in **Kemp** that "the **Ortiz** position has not been accepted in the federal system." **Id.** at 1260; **see also id.** at 1259-60 (discussing three federal circuit court decisions that rejected the **Ortiz** rule). Additionally, we stressed in **Kemp** that the **Ortiz** rule was not supported by our Supreme Court's reasoning in **Commonwealth v. Freeman**, 757 A.2d 903 (Pa. 2000), the case on which **Ortiz** relied. The **Kemp** panel explained

that "*Freeman* does not hold that facts garnered during a constitutionally-proper traffic stop cannot be utilized in assessing whether reasonable suspicion exists for a detention that continues after the reason for the traffic stop has been resolved." *Kemp*, 961 A.2d at 1257. Rather, we explained in *Kemp* that,

> [t]he Supreme Court in *Freeman* quite plainly stated that in order to justify a continued detention beyond the initial valid detention, which was the traffic stop, police needed reasonable suspicion that the defendant was engaged in criminal activity independent of that initial lawful detention. In other words, once police process the traffic violation, they cannot rely upon the traffic violation to prolong the detention; they need other information supporting reasonable suspicion.
>
> In *Freeman,* no facts were ascertained during the traffic stop or thereafter to provide reasonable suspicion that the defendant was involved in criminal activity. The Court did not imply that anything discovered during the course of a traffic stop could not be utilized to justify an ensuing investigatory detention. Indeed, the Court actually analyzed what police were told during the traffic stop, which would imply, contrary to the holding in *Ortiz,* that those facts **can** be considered in determining whether reasonable suspicion existed for an investigatory detention initiated after a vehicular violation has been processed.

*Kemp*, 961 A.2d at 1258 (emphasis in original).

For all of these reasons, the *Kemp* panel "overrule[d] *Ortiz* and *Johnson* to the extent that they hold that facts gathered during a valid traffic stop cannot be utilized to justify an investigatory detention occurring after a police officer has indicated that a defendant is free to leave." *Id.* at

- 11 -

1260. Thus, **Kemp** explicitly precludes this Court from applying the type of limited reasonable suspicion analysis that Appellant advocates.[4] Instead, in situations where an officer ends a lawful traffic stop, but then re-initiates an investigative detention of an occupant of that vehicle, we apply the 'totality of the circumstances' test to assess whether the officer possessed reasonable suspicion. **See Kemp**, 961 A.2d at 1260. Under that test, the officer's reasonable suspicion to conduct the subsequent detention may be premised on facts gathered *during* the valid traffic stop, **id.** at 1258, although the officer cannot solely rely "upon the initial traffic violation to prolong the detention; they need other information supporting reasonable suspicion." **Id.** at 1260 (clarifying our Supreme Court's holding in **Freeman**).

_____

[4] To the extent that the case on which Appellant relies, **Nguyen**, can be interpreted as applying the type of limited reasonable suspicion assessment struck down in **Kemp**, we are clearly bound to follow the *en banc* decision in **Kemp**, rather than the three-judge panel decision in **Nguyen**. We also note that the **Nguyen** panel did not distinguish **Kemp**, or cite any decision by the United States Supreme Court, the Pennsylvania Supreme Court, or an *en banc* panel of this Court that could be interpreted as overruling or abrogating **Kemp**. Rather, the only decision relied upon by the **Nguyen** panel was this Court's three-judge panel decision in **Jones**. **See Nguyen**, 116 A.3d at 668 (quoting **Jones**, 874 A.2d at 117). However, **Jones** was decided prior to **Kemp**, and also applied an interpretation of **Freeman** that was expressly renounced by the **Kemp** panel. Accordingly, Appellant's reliance on **Nguyen** is misplaced and we are bound to follow **Kemp**.

Applying the totality-of-the-circumstances test in the present case, we conclude that Sergeant Still possessed reasonable suspicion to conduct the second detention of Appellant. Aside from the traffic violations that compelled Sergeant Still to conduct the traffic stop, the sergeant observed, during the course of the stop, that Appellant appeared "confused and her movements were sluggish." N.T. Suppression Hearing at 5. When Sergeant Still returned to his vehicle to process the paperwork supplied by Appellant, he "noticed that the passenger, Mr. Lewis, was making furtive movements around the passenger area compartment of the vehicle and [Mr. Lewis] also had opened up the passenger door briefly and re-closed it." *Id.* at 6. When the sergeant returned to the driver's side window of Appellant's car, he "smelled an odor of marijuana coming from the interior of the vehicle." *Id.* at 7. Upon smelling the marijuana, Sergeant Still suspected that Appellant and Mr. Lewis may have been "smoking marijuana in the vehicle and driving[,]" which constituted the criminal offense of "impairment behind the wheel" or, in other words, DUI. *Id.* at 14. Based on these facts, it was reasonable for Sergeant Still to suspect that Appellant was engaged in criminal activity.[5] Therefore, Appellant's detention was legal.[6]

_____

[5] Appellant does not argue that these facts failed to provide Sergeant Still with reasonable suspicion; rather, she only contends that *Nguyen* limits the facts we may consider in assessing whether reasonable suspicion existed.

[6] Appellant does not challenge the voluntariness of her consent to search her vehicle, other than to claim that her consent was given during an illegal

*(Footnote Continued Next Page)*

Dispositional order affirmed.

President Judge Emeritus Ford Elliott joins this opinion.

President Judge Emeritus Stevens files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2016

---

*(Footnote Continued)* —————

detention. Because that claim is meritless, we need not assess the validity of her consent to search.