J-S32005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DWAYNE ANTHONY LATTY | : | |
| | : | |
| Appellant | : | No. 3433 EDA 2018 |

Appeal from the Judgment of Sentence Entered September 27, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0005896-2017

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.: **FILED AUGUST 15, 2019**

Dwayne Anthony Latty ("Appellant") appeals from the judgment of sentence entered after the Lehigh County Court of Common Pleas, sitting as the factfinder in Appellant's nonjury trial, found him guilty of Possession with Intent to Deliver ("PWID") a Controlled Substance (cocaine), Possession of a Controlled Substance (cocaine), Possession of Drug Paraphernalia, and Speeding.[1] We affirm.

In its opinion to this Court, the trial court explained the procedural history of this case as follows:

> [Appellant] was charged in the above-captioned matter with [PWID] (cocaine), Possession of a Controlled Substance (cocaine), Possession of Drug Paraphernalia, and Speeding. An Omnibus Pretrial Motion in the nature of a Motion to Suppress Physical

---

[1] 35 P.S. §§ 780-113(a)(30), (16), (32), and 75 Pa.C.S. § 3362(a), respectively.

Evidence was filed by [Appellant]. An evidentiary hearing relative to [Appellant's] motion was conducted before this [c]ourt on June 4, 2018. At the evidentiary hearing, the Commonwealth presented the testimony of Trooper Brian Konopka of the Pennsylvania State Police, Fogelsville Barracks. [Appellant] did not testify on his own behalf. In addition, this [c]ourt reviewed the dash cam video from the subject stop. After hearing, by Order and Opinion [dated] June 18, 2018, this [c]ourt denied [Appellant's] Omnibus Pretrial Motion.

Trial Court Opinion, 11/7/18, at 1–2 (original footnotes omitted). In disposing of Appellant's omnibus motion, the suppression court entered the following findings of fact:

1. On October 4, 2017, at approximately 4:40 P.M., Trooper Brian Konopka of the Pennsylvania State Police, Fogelsville Barracks, was patrolling in the area of Interstate 78 west in Allentown, Upper Saucon Township, Lehigh County, Pennsylvania. Trooper Konopka was patrolling in a marked vehicle and in full uniform.

2. Trooper Konopka observed a silver Chevrolet Cruze traveling the center lane of travel at a very slow rate of speedy, thereby impeding the flow of traffic.[5] Trooper Konopka then proceeded to follow the subject vehicle. During this interval, the vehicles [sic] speed increased substantially. In fact, Trooper Konopka clocked the vehicle . . . traveling at 68 mph in a posted 55 mph zone. Therefore, Trooper Konopka initiated a traffic stop on I-78 westbound.

   [5] [Appellant] was traveling at approximately 40 mph in a posted 55 mph zone.

3. There were two (2) occupants in the subject vehicle. Trooper Konopka approached the passenger side of the vehicle and immediately detected a strong smell of raw marijuana emanating from the vehicle. In addition, there were numerous black tree-shaped air fresheners throughout the vehicle.[6] Trooper Konopka also observed in the vehicle an iPhone that was being used as a GPS device. The iPhone displayed a destination that was over eight (8) hours away.

6 Trooper Konopka testified that there were approximately five (5) to ten (10) air fresheners spread out between the front of the vehicle and the rear passenger compartment. Based on Trooper Konopka's training and experience, he opined that air fresheners are used to mask odors of contraband in case canines are called on scene, as well as from plain smell.

4. Trooper Konopka requested that the driver and the passenger provide him with the appropriate documents, including their identification. This request was complied with, and consequently the driver was identified as [Appellant] of Brooklyn, New York. The front passenger was identified as [Appellant's] friend, Fabian Jackson, of Houston, Texas. In addition, the vehicle was registered to a third party who resided in Allentown, Pennsylvania, and who was not present in the vehicle at the time of the stop.

5. Trooper Konopka requested that [Appellant] exit his vehicle so that [the trooper] could speak with him. Upon complying, [Appellant] appeared to be nervous. He told Trooper Konopka that he was traveling to Maryland from New York, but was unable to provide any specific details. Interesting, Trooper Konopka noted that this information contradicted the destination on the iPhone GPS. Also, [Appellant] advised Trooper Konopka that he had been driving the vehicle for approximately one and a half (1 ½) years and that he received it from his Jamaican friend, Richard Hines, in exchange for a truck.[7] [Appellant's] behavior appeared unusual, as he repeatedly stuttered and would not make eye contact with Trooper Konopka during their conversation. Trooper Konopka requested consent to search the vehicle based on the totality of the circumstances surrounding the traffic stop and [Appellant] denied consent.

7 [Appellant] later related to Trooper Konopka that the vehicle was given to him by a friend.

6. After speaking with [Appellant], Trooper Konopka spoke separately with the passenger while he was still in the vehicle. Mr. Jackson told Trooper Konopka that they were traveling to Charlotte from New York,[8] but did not know what state Charlotte was located [in]. Then, Trooper Konopka inquired if

- 3 -

there was any marijuana in the vehicle. At this time, Mr. Jackson produced a clear plastic container from his right pants pocket containing a small amount of suspected marijuana. At this time, Trooper Konopka took possession of the marijuana and requested that the passenger exit the vehicle.

> [8] Trooper Konopka testified that New York is a known source city for narcotics, meaning that narcotics are frequently transported out of New York to other United State[s] destinations.

7. Based on his training and experience, as well as his observations and the circumstances surrounding the vehicle stop, Trooper Konopka conducted a search of the vehicle. As a result of this search, Trooper Konopka located a black plastic grocery-style bag behind the spare tire in the trunk of the vehicle. Upon opening the bag, Trooper Konopka located a clear air-tight plastic bag containing a yellow in color cylindrical package with the word "Navi" in black marker on it. Trooper Konopka peeled back the packaging and observed a white powdery substance that he suspected to be cocaine. There appeared to be approximately 530 grams of suspected cocaine.[9]

> [9] The suspected cocaine field-tested positive for cocaine.

8. Consequently, [Appellant] and Mr. Jackson were placed into custody and transported to the Fogelsville Barracks of the Pennsylvania State Police.[10]

> [10] Consistent with drug trafficking, [Appellant] had two (2) cellular phones on his person, including a BLU smart phone and an LG [s]mart phone. Similarly, Mr. Jackson possessed two cellular phones, including an LG phone and an Apple iPhone.

9. This Court finds Trooper Konopka's testimony to be credible.

Suppression Court Opinion, 6/19/18, at 2−5. Based on its findings of fact, the

suppression court reached the following legal conclusions:

1. The stop and detention of [Appellant] was lawful in that Trooper Konopka pointed to specific and articulable facts

- 4 -

causing him to have a reasonable suspicion and probable cause that criminal activity may be afoot.

2. Trooper Konopka possessed probable cause to arrest [Appellant].

3. The search of [Appellant's] vehicle was lawful and supported by probable cause.

4. The physical evidence obtained by the police was not obtained in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution, and need not be suppressed.

*Id.* at 5.

Thereafter:

[o]n August 27, 2018, a non-jury trial was conducted. After trial, this [c]ourt found [Appellant] guilty of [the above-referenced charges]. Then, on September 27, 2018, this [c]ourt sentenced [Appellant] to a term of imprisonment in a state correctional facility of not less than three (3) years nor more than six (6) years on the charge of [PWID] a Controlled Substance (cocaine). No sentence was imposed on the charge of Possession of a Controlled Substance, (cocaine), as it merged for sentencing purposes. In addition, this [c]ourt imposed a sentence of not less than one (1) month nor more than twelve (12) months on the charge of Possession of Drug Paraphernalia. This sentence was ordered to run concurrently to the sentence imposed on the charge of [PWID] a Controlled Substance (cocaine). Finally, this [c]ourt imposed a fine of $51.00 on the charge of Speeding.

Trial Court Opinion, 11/7/18, at 2.

Appellant filed post-sentence motions on October 2, 2018, which the trial court denied on November 7, 2018. This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents three questions for our consideration:

A. Did the suppression court commit an error of law by denying Appellant's motion to suppress because the State Trooper lacked sufficient grounds to extend the traffic stop beyond that which was necessary for the initial stop?

B. Did the suppression court commit an error of law by denying Appellant's motion to suppress because the State Trooper lacked probable cause to conduct a search of the trunk of the vehicle in which [Appellant] was traveling?

C. Whether the trial court committed an error of law in convicting the Appellant of possession with the intent to distribute fentanyl recovered from the trunk of a vehicle in which [Appellant] was traveling?

Appellant's Brief at 3 (full capitalization omitted).

We first address Appellant's third issue because a successful sufficiency-of-the-evidence claim requires discharge. ***Commonwealth v. Mikitiuk***, ___ A.3d ___, ___, 2019 PA Super 195, *7 (Pa. Super. filed June 20, 2019). As a preliminary matter, we must consider whether Appellant has preserved this issue for appellate review.

This Court has stated, "In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Pa.R.A.P.] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." ***Commonwealth v. Stiles***, 143 A.3d 968, 982 (Pa. Super. 2016) (quoting ***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013)) (internal quotation marks omitted; emphasis added); ***see also*** Pa.R.A.P. 1925(b)(4)(ii) ("[T]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the

- 6 -

judge."). "Such specificity is of particular importance in cases where, as here, [A]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Garland*, 63 A.3d at 344. Failure to identify what specific elements the Commonwealth did not prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for appellate review. *See Commonwealth v. Tyack*, 128 A.3d 254, 261 (Pa. Super. 2015) (finding appellant's issues waived where "1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction").

Here, Appellant generically states the following in his Pa.R.A.P. 1925(b) statement:

> Whether the trial court committed an error of law in convicting the Appellant of possession with the intent to distribute Fentanyl recovered from the trunk of a vehicle in which he was traveling.

Pa.R.A.P. 1925(b) Statement, 12/17/18, at ¶ C (full capitalization omitted). Appellant does not identify any element of the PWID or other convictions that was not proven beyond a reasonable doubt. Additionally, Appellant's "Statement of Questions Involved" fails to specify what element(s) of PWID he is challenging on appeal. Appellant's Brief at 3. Finally, Appellant identifies the recovered contraband as Fentanyl, but he was charged with and convicted of possessing cocaine. Pa.R.A.P. 1925(b) Statement, 12/17/18, at ¶ C; Appellant's Brief at 3. Consequently, Appellant's nonspecific and inaccurate

claim challenging the sufficiency of the evidence, which fails to state any elements of any crimes allegedly not proven by the Commonwealth, is waived. *Tyack*, 128 A.3d at 261.

We note that, in the argument section of his appellate brief, Appellant complains that the evidence was insufficient to sustain the PWID and possession convictions. Appellant's Brief at 41. According to Appellant, the Commonwealth "failed to establish beyond a reasonable doubt that he constructively possessed . . . the drugs hidden in the vehicle" or that he "actually knew of the existence of the contraband [and] if he did, he had the intent to possess it[.]" *Id.* at 42. To the extent that Appellant attempts to challenge the sufficiency of the possession and *mens rea* evidence supporting his possession convictions, we would conclude that, even if not waived, his claim would not merit relief.

In reaching this conclusion, we would rely on—and adopt as our own—the well-reasoned analysis of the trial court in its Pa.R.A.P. 1925(a) opinion. Trial Court Opinion, 11/7/18, at 3–8. After stating the applicable law and reiterating the facts of record, the trial court disposed of Appellant's sufficiency challenge as follows:

> Viewing all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth, it is clear that the evidence was sufficient to enable a finder of fact to conclude that all the elements of the offenses were established beyond a reasonable doubt. Indeed, at the conclusion of the bench trial, this [c]ourt had no doubt that [Appellant] constructively possessed the [cocaine], and that he possessed it with the intent to deliver it.

- 8 -

*Id.* at 8. In sum, were we to reach this issue, we would conclude the Commonwealth proved beyond a reasonable doubt that Appellant possessed the cocaine found in the trunk of the vehicle he was driving with the intent to deliver it.

Appellant's remaining issues challenge the trial court's denial of his motion to suppress physical evidence of cocaine recovered from the vehicle he was driving. Appellant's Brief at 14, 36. With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record .... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013). In addition, questions

- 9 -

of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. ***Commonwealth v. Freidl***, 834 A.2d 638, 641 (Pa. Super. 2003).

On appeal, Appellant first argues that Trooper Konopka "did not have a 'particularized and objective basis' for suspecting that [A]ppellant had or was engaging in criminal activity after he returned to [A]ppellant upon finding nothing unusual or suspicious in [A]ppellant's and the vehicle's paperwork." Appellant's Brief at 22. According to Appellant, "[m]ere nervousness and the other observations[2] by the [trooper] before he checked the documents and ran the licenses certainly did not provide grounds to continue an ended traffic stop." ***Id.*** at 27.[3]

Appellant supports his argument that the extended detention was unlawful with citations to older decisions. He fails to address the Pennsylvania Supreme Court's recent decision in ***In Interest of A.A.***, 195 A.3d 896 (Pa. 2018). Therein, our Supreme Court confirmed that:

> "all relevant facts" and the "whole picture" necessarily includes any information learned by a police officer during an initial lawful traffic stop, irrespective of whether or not the officer suggests at

---

[2] Appellant identifies the "other observations" as "inconsistent responses, air fresheners, a smell of marijuana, and a trip calculator that looked suspicious." Appellant's Brief at 33 (footnote omitted).

[3] In response, the Commonwealth relies on the suppression court's analysis. Commonwealth's Brief at 9. The suppression court's analysis consists of citing relevant legal authority and repeating its findings of fact. Suppression Court Opinion, 6/19/18, at 5–7, 7–9.

some point during that stop that the subject of the stop is free to leave or tells him or her to "have a good night."

*Id.* at 910 (internal quotation marks omitted). Thus, Appellant's legal authority is inapposite.

As for the merit of Appellant's first suppression argument, we conclude that he is not entitled to relief. Trooper Konopka stopped Appellant for a violation of the Motor Vehicle Code. N.T., 6/4/18, at 4–5.[4] Upon processing Appellant's documentation, Trooper Konopka learned that Appellant's license was valid and he had no active warrants. *Id.* at 12. Trooper Konopka re-approached Appellant to ask him "some clarifying questions about his vehicle and his travel arrangement due to the major conflictions [sic] that [the trooper] obtained on [his] initial traffic stop." *Id.* When Trooper Konopka extended the traffic stop by questioning Appellant about his possession of the vehicle, he knew the following relevant facts:

- Trooper Konopka had five years of experience as a Pennsylvania State Police Trooper, approximately 150 to 200 drug arrests during that period, and over 300 hours of criminal intra-diction training. N.T., 6/4/18, at 4, 10.

- Appellant produced a New York driver's license, the vehicle was registered to a third-person who was not present in the vehicle, and the registration card was not signed. *Id.* at 7, 13.

- Appellant gave inconsistent statements related to his possession of the vehicle. *Id.* at 8, 12–13.

_____

[4] Appellant does not challenge the validity of the traffic stop by Trooper Konopka. N.T., 6/4/18, at 34.

- 11 -

- Appellant appeared nervous; he was unable to provide specific details as to his travel plans; his statement that he was traveling from New York to Maryland contradicted the iPhone GPS display. *Id.* at 8–9.

- Appellant stuttered and would not make eye contact with the trooper. *Id.* at 9.

- Trooper Konopka detected a strong smell of raw marijuana emanating from the vehicle, saw "a significant number" of tree-shaped air fresheners throughout the passenger compartment of the vehicle, and knew that air fresheners are used to "mask any type of odor." *Id.* at 9–10, 14–15.

- The passenger, Fabian Jackson, stated he was traveling from New York to "Charlotte," but he did not know where Charlotte was. *Id.* at 10.

- Trooper Konopka knew that New York is a source city for narcotics, which are then transported throughout the United States. *Id.* at 10–11.

Based on the foregoing facts of record, we conclude that Trooper Konopka had reasonable suspicion to extend the initial detention in order to investigate Appellant's inconsistent statements about his possession of the vehicle and his travel plans. *In Interest of A.A.*, 195 A.3d at 910. Appellant's contrary claim fails.

In his second suppression issue, Appellant argues that Trooper Konopka lacked probable cause to search the trunk of the vehicle. Appellant's Brief at 36. According to Appellant, "after [Mr.] Jackson exited the car with his personal supply of marijuana," Trooper Konopka did not observe any other odor, drugs, or paraphernalia in the vehicle; therefore, the trooper lacked "probable cause to believe that there was additional drugs or contraband in the car." *Id.* at 40. In support of his position, Appellant directs our attention

to this Court's recent decision in ***Commonwealth v. Scott***, ___ A.3d ___, 2019 PA Super 154 (Pa. Super. filed May 10, 2019), wherein we reviewed the warrantless search of a vehicle trunk.  Appellant's Reply Brief at 1.

The ***Scott*** Court reiterated the legal principles relevant to a warrantless search of a vehicle:

> The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required. The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a *per se* exigency allowing police officers to make the determination of probable cause in the first instance in the field.
>
> The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant.  Probable cause does not demand the certainty we associate with formal trials. Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place. The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer.
>
> The Supreme Court of the United States has held that an odor may be sufficient to establish probable cause.... [W]e analogized a 'plain smell' concept with that of plain view and held that where an officer is justified in being where he is, his detection of the odor of marijuana is sufficient to establish probable cause.
>
> Regarding the search of an automobile, the scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. It

follows from the foregoing that if a police officer possesses probable cause to search a motor vehicle, he may then conduct a search of the trunk compartment without seeking to obtain probable cause relative to the particularized area.

*Scott*, \_\_\_ A.3d at \_\_\_, 2019 PA Super 154 at *3–4 (internal quotation marks, citations, and original brackets omitted).

In *Scott*, a police officer stopped the defendant for a motor vehicle violation. When the officer approached the vehicle, "he could smell the strong odor of burnt marijuana . . . and saw that smoke was still emanating from the vehicle. He also saw [the defendant] attempt to place a blunt in the center counsel." *Scott*, \_\_\_ A.3d at \_\_\_, 2019 PA Super 154 at *1 (citing Trial Court Opinion, 1/30/18, at 2–3). After detaining the defendant and without asking consent, police officers searched the passenger compartment of the vehicle, where they found a blunt, a jar of alleged marijuana, and a black ski mask; they could smell only the odor of burnt marijuana. *Id.* The police officers then searched the trunk of the vehicle, where they "found a loaded .38 caliber revolver wrapped in clothes." *Id.* (citing Trial Court Opinion, 1/30/18, at 3).

The defendant litigated a motion to suppress the firearm recovered from the trunk, arguing "that the officers conducted an illegal, warrantless search of the trunk." *Scott*, \_\_\_ A.3d at \_\_\_, 2019 PA Super 154 at *2 (citing N.T., 10/30/17, at 28, 30). The trial court granted the defendant's suppression motion, concluding that the officers lacked probable cause to search the trunk because the smell and contraband were limited to the passenger compartment of the vehicle.

On appeal of the suppression ruling, the Commonwealth argued that the federal automobile exception adopted by a plurality of the Pennsylvania Supreme Court in **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014) (plurality), authorized the search. According to the Commonwealth, the **Gary** Court opined that, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." **Gary**, 91 A.3d at 11 (quoting **United States v. Ross**, 456 U.S. 798 (1982)). "Based upon the existence of probable cause, as well as the officers' recovery of the blunt and an additional jar of marijuana from the passenger compartment, the Commonwealth insist[ed] that 'the officers were entitled to search anywhere in the car, including the trunk, for additional' drugs." **Scott**, ___ A.3d at ___, 2019 PA Super 154 at *2.

The **Scott** Court affirmed the trial court, agreeing that the police officer did not establish sufficient probable cause to continue to search the trunk" of the defendant's vehicle. **Scott**, ___ A.3d at ___, 2019 PA Super 154 at *4. According to the **Scott** panel:

> the lingering odor of burnt marijuana was consistent with the contraband that the officer observed in plain view. . . . Furthermore, the record does not provide any other facts that could have supported a belief that additional contraband was located in the trunk. The officer did not testify that [the defendant] fidgeted or displayed nervous behavior. . . .

\* \* \*

- 15 -

Likewise, the officer did not indicate that he had received any sort of special training to support his belief that additional contraband was located in the trunk.

Under these circumstances, the odor of burnt marijuana and small amount of contraband recovered from the passenger compartment of the vehicle did not create a fair probability that the officer could recover additional contraband in the trunk.

*Id.* at \*4–5 (internal citations omitted).

Upon review, we consider **Scott** factually distinguishable and conclude that the trial court did not err in denying suppression. In contrast to the lack of evidence providing probable cause to search the trunk in **Scott**, the totality of the circumstances known to Trooper Konopka during the extended detention provided probable cause to search the trunk of Appellant's vehicle. Trooper Konopka's training and experience as a drug enforcement officer, the significant quantity of air fresheners, Appellant's nervous demeanor, his inconsistent statements regarding possession of the vehicle, and the contradictory evidence about his travel plans, along with the following facts of record support Trooper Konopka's search of the trunk:

- When Trooper Konopka asked Appellant "if there's any heroin, cocaine, marijuana, large quantities of untaxed cigarettes, if there's large quantities of US currency in the vehicle[,]" Appellant looked "at the vehicle multiple times but he had related 'no' to all of them." N.T., 6/4/18, at 13.

- When Trooper Konopka asked Appellant for consent to search the vehicle, Appellant asked why; when the trooper explained he was looking for any of the items he had just mentioned, Appellant denied consent. *Id.*

- When Trooper Konopka asked Appellant why the vehicle smelled like marijuana, Appellant became very defensive, denied any knowledge

- 16 -

about marijuana in the vehicle or "why it might smell like that." *Id.* at 13–14.

- When asked about marijuana in the vehicle, Mr. Jackson first responded negatively. *Id.* at 26–27. He later produced a small amount of marijuana and informed Trooper Konopka that the vehicle smelled like marijuana because the passenger "had it in his hand and had to put it back into a small container that he had and put it back into his pocket." *Id.* at 14.

- In Trooper Konopka's training and experience, "numerous criminals have produced a small amount of marijuana as a way to get the police to stop searching vehicles and thus, say, 'Oops, you got me. Here's a small amount of marijuana,' when in fact there's a large quantity of it, either an additional substance or that same substance in the vehicle." *Id.* at 29.

- Appellant and the passenger each possessed two cell phones, which, according to Trooper Konopka's training and experience, is common among "people who are often trafficking narcotics or contraband or anything illegal[.]" *Id.* at 16–17.

We reiterate: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Gary*, 91 A.3d at 11. Here, Appellant's vehicle was lawfully stopped, and the totality of the circumstances provided probable cause to search the passenger compartment and trunk of the vehicle for contraband. Appellant's contrary claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/15/19</u>

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA**

**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA    )
                                    )
              vs.                   ) Case No.   5896/2017
                                      )
DWAYNE LATTY,                 )
        Defendant             )

\* \* \* \* \* \* \* \*

APPEARANCES:

> KEVIN MCCLOSKEY, ESQUIRE,
> DEPUTY DISTRICT ATTORNEY,
>     On behalf of the Commonwealth
>
> GREGORY J. PAGANO, ESQUIRE,
>     On behalf of Defendant

\* \* \* \* \* \* \* \*

**OPINION**

MARIA L. DANTOS, J.

       Defendant, Dwayne Latty, was charged in the above-captioned matter with Possession with Intent to Deliver a Controlled Substance (cocaine),[1] Possession of a Controlled Substance (cocaine),[2] Possession of Drug Paraphernalia,[3] and Speeding.[4] An Omnibus Pretrial Motion in the nature of a Motion to Suppress Physical Evidence was filed by the Defendant. An evidentiary hearing relative to Defendant's motion was conducted before this Court on June

---

[1]    35 P.S. § 780-113(a)(30).
[2]    35 P.S. § 780-113(a)(16).
[3]    35 P.S. § 780-113(a)(32).
[4]    75 Pa. C.S.A. § 3362(a).

4, 2018. At the evidentiary hearing, the Commonwealth presented the testimony of Trooper Brian Konopka of the Pennsylvania State Police, Fogelsville Barracks. The Defendant did not testify on his own behalf. In addition, this Court reviewed the dash cam video from the subject stop. After hearing, by Order and Opinion of June 18, 2018, this Court denied the Defendant's Omnibus Pretrial Motion.

On August 27, 2018, a non-jury trial was conducted. After trial, this Court found the Defendant guilty of Possession with Intent to Deliver a Controlled Substance (cocaine), Possession of a Controlled Substance (cocaine), Possession of Drug Paraphernalia, and Speeding. Then, on September 27, 2018, this Court sentenced the Defendant to a term of imprisonment in a state correctional facility of not less than three (3) years nor more than six (6) years on the charge of Possession with Intent to Deliver a Controlled Substance (cocaine). No sentence was imposed on the charge of Possession of a Controlled Substance, (cocaine), as it merged for sentencing purposes. In addition, this Court imposed a sentence of not less than one (1) month nor more than twelve (12) months on the charge of Possession of Drug Paraphernalia. This sentence was ordered to run concurrently to the sentence imposed on the charge of Possession with Intent to Deliver a Controlled Substance (cocaine). Finally, this Court imposed a fine of $51.00 on the charge of Speeding. Presently before this Court is Defendant's Post Sentence Motion Pursuant to Pennsylvania Rule of Criminal Procedure Rule 720. In the Defendant's Post Sentence Motions, the Defendant challenges the sufficiency and weight of the evidence, as well as this Court's decision of denying the Defendant's Motion to Suppress.

2

A. Challenging the Sufficiency of the Evidence

The Defendant asserts that the verdict was not supported by sufficient evidence because the Commonwealth failed to prove that the Defendant constructively possessed the fentanyl that was recovered from the inside of the trunk of the vehicle. Defendant's assertion lack merit.

A claim challenging the sufficiency of the evidence is a question of law which asserts that there is insufficient evidence to support at least one material element of the crime for which the Defendant was convicted. Commonwealth v. Lyons, 833 A.2d 245, 258 (Pa. Super. 2003). The standard for reviewing sufficiency challenges was explained in the following manner by the Superior Court of Pennsylvania:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.

Commonwealth v. Taylor, 831 A.2d 661, 663 (Pa. Super. 2003), *quoting* Commonwealth v. DiStefano, 782 A.2d 574, 582 (Pa. Super. 2001). In addition, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Commonwealth v. Hunzer, 868 A.2d 498, 505 (Pa. Super. 2005). Any doubts regarding a defendant's guilt are properly resolved by the finder of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. Id. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Id. If the finder of fact reasonably

3

could have determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict. Id. at 506.

Initially this Court notes that the Defendant was found guilty of Possession of a Controlled Substance. This crime is defined as "[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act." 35 P.S. §780-113(a)(16). Therefore, the Commonwealth had to establish that the Defendant possessed the controlled substance. See 35 P.S. § 780-113(a)(16). Because the drugs were not found on the Defendant's person, the Commonwealth had to prove constructive possession. Commonwealth v. Kirkland, 831 A.2d 607, 610 (Pa. Super. 2003); Commonwealth v. Aviles, 419 Pa. Super. 345, 615 A.2d 398, 401 (1992); Commonwealth v. Mudrick, 510 Pa. 305, 507 A.2d 1212, 1213 (1986). "Constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control." Commonwealth v. Bricker, 882 A.2d 1008, 1014 (Pa. Super. 2005), citing, Commonwealth v. Petteway, 847 A.2d 713, 716 (Pa. Super. 2004). Elements of constructive possession of contraband may be inferred from the totality of the circumstances and may be proven by circumstantial evidence. Commonwealth v. Gray, 322 Pa. Super. 37, 469 A.2d 169 (1983), affirmed, 509 Pa. 476, 503 A.2d 921 (1985); Commonwealth v. Haskins, 450 Pa. Super. 540, 677 A.2d 328 (1996), appeal denied, 547 Pa, 751,

4

692 A.2d 563 (1997). In addition, a person is guilty of Possession with Intent to Deliver a Controlled Substance under 35 P.S. § 780-113(a)(30) if he delivers, or possesses with the intent to deliver, a controlled substance, and he is not registered under this act or licensed by the appropriate State board, or he knowingly creates, delivers or possesses with the intent to deliver a counterfeit controlled substance. 35 P.S. § 780-113(a)(30). The Commonwealth sustained its burden.

In the instant case, the evidence established that on October 4, 2017, at approximately 4:40 P.M., Trooper Brian Konopka of the Pennsylvania State Police, Fogelsville Barracks, was patrolling in the area of Interstate 78 west in Allentown, Upper Saucon Township, Lehigh County Pennsylvania. Trooper Konopka was patrolling in a marked vehicle and in full uniform. Trooper Konopka observed a silver Chevrolet Cruze traveling the center lane of travel at a very slow rate of speed, thereby impeding the flow of traffic.[5] Trooper Konopka then proceeded to follow the subject vehicle. During this interval, the vehicles speed increased substantially. In fact, Trooper Konopka clocked the vehicle at traveling at 68 mph in a posted 55 mph zone. Therefore, Trooper Konopka initiated a traffic stop on I-78 westbound, near mile marker 57.7 (C. Ex. 2). There were two (2) male occupants in the subject vehicle. Trooper Konopka approached the passenger side of the vehicle and immediately detected a strong smell of raw marijuana emanating from the vehicle. In addition, there were numerous black tree-shaped air fresheners throughout the

---

[5] The Defendant was traveling at approximately 40 mph in a posted 55 mph zone. Trooper Konopka had clocked the Defendant's speed with his vehicle, as he followed the vehicle for .3 miles using the speedometer on his police vehicle. Of note, the speedometer on the police cruiser had been tested for accuracy and certified by Rabold's Services, an approved maintenance and calibration facility pursuant to 44 Pa. Bulletin § 2589, on July 13, 2017.

5

vehicle.[6] Trooper Konopka also observed in the vehicle an iPhone that was being used as a GPS device. The iPhone displayed a destination that was over eight (8) hours away.

Trooper Konopka requested that the driver and the passenger provide him with the appropriate documents, including their identification. This request was complied with, and consequently the driver was identified as Defendant Dwayne Latty of Brooklyn, New York. The front passenger was identified as Defendant's friend, Fabian Jackson, of Houston, Texas. In addition, the vehicle was registered to a third party who resided in Allentown, Pennsylvania, and who was not present in the vehicle at the time of the stop. Trooper Konopka requested that the Defendant exit his vehicle so that he could speak with him. Upon complying, the Defendant appeared to be nervous and defensive. He told Trooper Konopka that he was traveling to Maryland from Bronx, New York, but was unable to provide any specific details. Interesting, Trooper Konopka noted that this information contradicted the destination on the iPhone GPS. Also, the Defendant advised Trooper Konopka that he had been driving the vehicle for approximately one and a half (1 ½) years and that he received it from his Jamaican friend, Richard Hinds, in exchange for a truck.[7] The Defendant's responses and behavior appeared unusual, as he repeatedly stuttered and would not make eye contact with Trooper Konopka during their conversation. Trooper Konopka requested consent to search the

---

[6]     Trooper Konopka testified that there were approximately five (5) to ten (10) air fresheners spread out between the front of the vehicle and the rear passenger compartment. Based on Trooper Konopka's training and experience, he opined that air fresheners are used to mask odors of contraband in case canines are called on scene, as well as from plain smell.

[7]     The Defendant later related to Trooper Konopka that the vehicle was given to him by a friend.

6

vehicle for contraband based on the totality of the circumstances surrounding the traffic stop and the Defendant denied consent.

After speaking with the Defendant, Trooper Konopka spoke separately with the passenger while he was still in the vehicle. Mr. Jackson told Trooper Konopka that they were traveling to Charlotte from New York,[8] but did not know what state Charlotte was located. Then, Trooper Konopka inquired if there was any marijuana in the vehicle. At this time, Mr. Jackson denied it, but then produced a clear plastic container from his right pants pocket containing a small amount of suspected marijuana. At this time, Trooper Konopka took possession of the marijuana and requested that the passenger exit the vehicle.

Based on his training and experience, as well as his observations and the circumstances surrounding the vehicle stop, Trooper Konopka conducted a search of the vehicle. As a result of this search, Trooper Konopka located a black plastic grocery-style bag next to the spare tire in the trunk of the vehicle. Upon opening the bag, Trooper Konopka located a clear air-tight, vacuum-packed plastic bag containing a yellow in color cylindrical package with the word "Navi" in black marker on it. Trooper Konopka peeled back the packaging and observed a white powdery substance that he suspected to be cocaine.[9] (C. Ex. 3; C. Ex. 4; C. Ex. 5; C. Ex. 6; C. Ex. 7; C. Ex. 8; C. Ex. 9). Consequently, the Defendant and Mr. Jackson were placed into custody and

---

[8]     Trooper Konopka testified that New York is a known source city for narcotics, meaning that narcotics are frequently transported out of New York to other United State destinations.

[9]     The suspected cocaine field-tested positive for cocaine. Thereafter, the items was submitted to the Bethlehem Regional Pennsylvania State Police Lab for analysis. (C. Ex. 3; C. Ex. 4; C. Ex. 5; C. Ex. 6; C. Ex. 7; C. Ex. 8). The item tested positive for 498.8 grams of fentanyl (C. Ex. 12).

7

transported to the Fogelsville Barracks of the Pennsylvania State Police.[10] (C. Ex. 10).

Viewing all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth, it is clear that the evidence was sufficient to enable a finder of fact to conclude that all the elements of the offenses were established beyond a reasonable doubt. Indeed, at the conclusion of the bench trial, this Court had no doubt that the Defendant constructively possessed the fentanyl, and that he possessed it with the intent to deliver it.

B. Challenging the Weight of the Evidence

The Defendant also alleges that the verdict was against the weight of the evidence, as the Commonwealth did not prove that the Defendant constructively possessed the fentanyl that was located in the trunk of the vehicle. This Court notes that a motion for a new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict, but contends that it is against the weight of the evidence. Commonwealth v. Widmer, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000); Commonwealth v. Bennett, 827 A.2d 469, 481 (Pa. Super. 2003). Furthermore, a challenge that the verdict is against the weight of the evidence requires this Court to conclude in its discretion that "the verdict is so contrary to the evidence as to shock one's sense of justice." Lyons, 833 A.2d at 258. Indeed, for a new trial to lie on a challenge that the verdict is against the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the

---

[10] Consistent with drug trafficking, the Defendant had two (2) cellular phones on his person, including a Samsung BLU smart phone and an LG Smart phone.

8

verdict shocks the conscience of the court." Commonwealth v. Shaffer, 722 A.2d 195, 200 (Pa. Super. 1998). See also Commonwealth v. Sullivan, 820 A.2d 795, 806 (Pa. Super. 2003).

From the evidence recounted above, it is reasonable to have concluded that the Defendant was the individual who constructively possessed the fentanyl, and that he possessed it with the intent to deliver it. Accordingly, the Defendant's challenge to the weight of the evidence must fail.

### C. Motion to Suppress

Finally, the Defendant contends in his Post Sentence Motion that this Court erred in denying the Defendant's Omnibus Pretrial Motion. We cannot agree with the Defendant's assertion.

Initially we note that an investigative detention subjects a person to a stop and a period of detention, but it does not involve coercive conditions. Commonwealth v. Cottman, 764 A.2d 595, 598 (Pa. Super. 2000). In order to justify the restraint on liberty imposed by an investigative stop, the investigating officer must have a reasonable belief that the person detained has been involved in criminal activity. Commonwealth v. Bennett, 827 A.2d 469, 477 (Pa Super. 2003). To establish grounds for reasonable suspicion, the police must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led them reasonably to conclude, in light of their experience, that criminal activity was afoot and that the person was involved in that activity. Commonwealth v. Wilson, 440 Pa. Super. 269, 927 A.2d 279 (2007), *appeal granted*, 543 Pa. 509, 673 A.2d 864 (1996); Bennett, 827 A.2d at 477; In re J.V., 762 A.2d 3765, 379-380 (Pa. Super.

9

2000). Mere hunches on the part of the officer are insufficient to meet this burden.[11] Bennett, 827 A.2d at 478.

Additionally, generally, for an arrest to be lawful, it must occur pursuant to a warrant. However, a warrantless arrest is constitutionally valid under the Fourth Amendment to the United States Constitution when it is supported by probable cause. Commonwealth v. Barnett, 484 Pa. 211, 398 A.2d 1019 (1979). The determination of whether probable cause exists to support a warrantless arrest is based on an evaluation of the totality of the circumstances observed by the officer when making the arrest. Clark, 735 A.2d at 1252; Commonwealth v. Banks, 540 Pa. 453, 658 A.2d 752 (1995). Specifically, under the totality of the circumstances test, probable cause is present where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983). See also Commonwealth v. Gibson, 536 Pa. 123, 638 A.2d 203, 206 (1994); Commonwealth v. Dennis, 417 Pa. Super. 425, 429-430, 612 A.2d 1014, 1016 (1992).

In the instant case, the testimony presented at the pretrial hearing established that on October 4, 2017, at approximately 4:40 P.M., Trooper Brian Konopka of the Pennsylvania State Police, Fogelsville Barracks, was patrolling in the area of Interstate 78 west in Allentown, Upper Saucon Township, Lehigh County Pennsylvania. Trooper Konopka was patrolling in a marked vehicle and

---

[11]    A law enforcement officer's actual subjective motivation in executing a stop, even if pretextual, is nevertheless irrelevant if sufficient antecedent justification is objectively present. Whren v. United States, 116 S.Ct. 1769 (1996).

10

in full uniform. Trooper Konopka observed a silver Chevrolet Cruze traveling the center lane of travel at a very slow rate of speed, thereby impeding the flow of traffic. Trooper Konopka then proceeded to follow the subject vehicle. During this interval, the vehicles speed increased substantially. In fact, Trooper Konopka clocked the vehicle at traveling at 68 mph in a posted 55 mph zone. Therefore, Trooper Konopka initiated a traffic stop on I-78 westbound. There were two (2) occupants in the subject vehicle. Trooper Konopka approached the passenger side of the vehicle and immediately detected a strong smell of raw marijuana emanating from the vehicle. In addition, there were numerous black tree-shaped air fresheners throughout the vehicle. Trooper Konopka also observed in the vehicle an iPhone that was being used as a GPS device. The iPhone displayed a destination that was over eight (8) hours away.

Trooper Konopka requested that the driver and the passenger provide him with the appropriate documents, including their identification. This request was complied with, and consequently the driver was identified as Defendant Dwayne Latty of Brooklyn, New York. The front passenger was identified as Defendant's friend, Fabian Jackson, of Houston, Texas. In addition, the vehicle was registered to a third party who resided in Allentown, Pennsylvania, and who was not present in the vehicle at the time of the stop. Trooper Konopka requested that the Defendant exit his vehicle so that he could speak with him. Upon complying, the Defendant appeared to be nervous. He told Trooper Konopka that he was traveling to Maryland from New York, but was unable to provide any specific details. Interesting, Trooper Konopka noted that this information contradicted the destination on the iPhone GPS. Also, the Defendant advised Trooper Konopka that he had been driving the vehicle for

11

approximately one and a half (1 ½) years and that he received it from his Jamaican friend, Richard Hines, in exchange for a truck. The Defendant's behavior appeared unusual, as he repeatedly stuttered and would not make eye contact with Trooper Konopka during their conversation. Trooper Konopka requested consent to search the vehicle based on the totality of the circumstances surrounding the traffic stop and the Defendant denied consent.

After speaking with the Defendant, Trooper Konopka spoke separately with the passenger while he was still in the vehicle. Mr. Jackson told Trooper Konopka that they were traveling to Charlotte from New York, but did not know what state Charlotte was located. Then, Trooper Konopka inquired if there was any marijuana in the vehicle. At this time, Mr. Jackson produced a clear plastic container from his right pants pocket containing a small amount of suspected marijuana. At this time, Trooper Konopka took possession of the marijuana and requested that the passenger exit the vehicle. Based on his training and experience, as well as his observations and the circumstances surrounding the vehicle stop, Trooper Konopka conducted a search of the vehicle. As a result of this search, Trooper Konopka located a black plastic grocery-style bag behind the spare tire in the trunk of the vehicle. Upon opening the bag, Trooper Konopka located a clear air-tight plastic bag containing a yellow in color cylindrical package with the word "Navi" in black marker on it. Trooper Konopka peeled back the packaging and observed a white powdery substance that he suspected to be cocaine. There appeared to be approximately 530 grams of suspected cocaine. Consequently, the Defendant and Mr. Jackson were placed into custody and transported to the Fogelsville Barracks of the Pennsylvania State Police.

12

Based on the foregoing, this Court found that Trooper Konopka articulated legitimate reasons on the record for conducting a traffic stop and investigative detention of the Defendant. Because the Defendant's stop and detention were made with reasonable suspicion and probable cause that a crime was being committed, this Court found that the stop and detention were lawful. Trooper Konopka pointed to specific and articulable facts that provided a justifiable basis for a legal stop, detention and subsequent arrest of the Defendant. Indeed, this Court concluded that based on the totality of the circumstances, the warrantless arrest of the Defendant and the search of the vehicle were justified and based on probable cause. Consequently, the search of the Defendant's vehicle was proper and legal. Accordingly, the physical evidence was lawfully obtained and did not need to be suppressed.

In light of the foregoing, the Defendant's Post Sentence Motions are denied.