J-A27023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TORIANO CHAZ GOLDMAN | : | |
| | : | |
| Appellant | : | No. 2201 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 4, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0007103-2019

BEFORE: PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED JANUARY 4, 2022**

Toriano Chaz Goldman (Appellant) appeals from the judgment of sentenced entered in the Delaware County Court of Common Pleas, following his non-jury conviction of two counts of driving under the influence (DUI) of controlled substances (marijuana), and driving while operating privilege is suspended (DUS).[1] Appellant raises issues challenging the sufficiency of the evidence supporting one of his DUI convictions, the denial of his motion to suppress, the admission of lay opinion and blood-testing testimony, and a purported **Brady**[2] violation. For the reasons below, we affirm.

---

[1] 75 Pa.C.S. §§ 3802(d)(1)(i), (d)(2), and 1543(a), respectively.

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

The facts giving rise to this case are aptly summarized by the trial court as follows:

On April 27, 2019, at approximately 2:35 a.m., Pennsylvania State Police Troopers Steven Slavin and his partner, Yeboa Cobbold were in full uniform in a marked patrol unit patrolling northbound Interstate 95 (I-95) in Tinicum Township, Delaware County at or near mile marker 9.7.

Trooper[s] Slavin and . . . Cobbold, observed [Appellant's] vehicle traveling northbound and queried the registration and learned the license of the registered owner, [ ] Appellant, was then currently suspended from the privilege of operating a motor vehicle.

Troopers Slavin and Cobbold were able to directly observe and identify Appellant operating the vehicle on northbound I-95 when they pulled alongside his car.[7]  As a result, a traffic stop was initiated.  Appellant pulled his vehicle over to the left-lane's/driver's-side shoulder.  From his position behind [ ] Appellant's vehicle, Trooper Slavin approached the driver-side window and Appellant opened the driver's window, and Trooper Slavin immediately noticed the odor of marijuana.

_____

[7] Trooper Slavin testified that he pulled alongside [Appellant's] vehicle and compared [Appellant's] license photograph displaced on his [vehicle computer screen] with the vehicle's driver/operator whom he identified as [ ] Appellant.

_____

. . . In the course of processing [ ] Appellant's license at the scene after informing Appellant he smelled marijuana, Trooper Slavin testified that Appellant admitted to smoking marijuana three (3) or four (4) hours earlier.  Trooper Slavin also noticed [ ] Appellant's reddened bloodshot eyes and had asked [ ] Appellant to step out of his car to perform field sobriety testing.

Ultimately, probable cause for [ ] Appellant's arrest turned not only on the Troopers' observations of smelling burnt marijuana[,] but also [ ] Appellant's admission of consuming marijuana and the clues and indicators developed in administering field testing and [ ] Appellant's performance thereof, including but not limited to, [ ] Appellant's bloodshot eyes, [ ] Appellant's

sleepiness and/or sluggishness, [ ] Appellant's loss of balance, failure to perform heel-to-toe touching while performing the heel-to-toe field test, [ ] Appellant's inability to count out 30 seconds while performing the Romberg testing administered by Trooper Slavin and related clues, including the fact that [ ] Appellant [could not] stop putting his foot down during the one-leg stand and was swaying, using his arms for balance and could not count or stand as instructed. These clues and indicators of impairment were significant, in that, Trooper Slavin plainly testified that had [ ] Appellant not demonstrated these indicators of impairment, he would not have been arrested.

Trial Ct. Op., 4/1/21, at 2-3 (citation and some footnotes omitted).

The Commonwealth charged Appellant with two counts of DUI, and one count each of DUS, possession of a small amount of marijuana and possession of drug paraphernalia.[3] On April 23, 2020, Appellant filed an omnibus pretrial motion, asserting, *inter alia*, that the officers lacked probable cause to detain and subsequently arrest him, and that his blood draw was involuntary. **See** Appellant's Omnibus Pretrial Motion for Relief, 4/23/20, at 10-11. Thus, he argued the evidence obtained following his detention should be suppressed. *Id.* at 13. The trial court conducted a suppression hearing on July 28, 2020. Thereafter, on August 17th, the court denied Appellant's omnibus pretrial motion. **See** Order, 8/17/20.

The case proceeded to a non-jury trial on November 4, 2020. That same day, Appellant filed a motion to compel discovery of "all 'Memorandums of Record' which contain or indicate 'oversights' in the recordings in the 'chain of custody' of blood results being used in criminal cases prosecuted by the

---

[3] **See** 35 P.S. §§ 780-113(a)(31), (32).

Commonwealth, for the time span of January, 2017 to the present[.]" Appellant's Motion to Compel Discovery, 11/4/20, at 2. The trial court denied the motion as a "fishing expedition" prior to the start of trial. N.T., 11/4/20, at 8. The Commonwealth proceeded only on the charges of DUI and DUS. At the conclusion of trial, the court found Appellant guilty of all charges. That same day, the trial court sentenced Appellant to a term of 30 days to six months' incarceration on DUI under subsection 3802(d)(1)(i) and a $1,000 fine for DUS. Appellant's conviction under Section 3802(d)(2) merged for sentencing purposes. This timely appeal follows.[4]

Although Appellant raised 22 issues in his Pa.R.A.P. 1925(b) statement, he presents only the following six claims for our review:

1. Whether evidence established at trial was insufficient to support the necessary elements of impaired driving under the influence of marijuana under Section 3802(d)(2)?

2. Whether arresting police officer lacked reasonable suspicion and probable cause to arrest and conduct a field sobriety test for "impaired driving" under the influence of marijuana under Section 3802(d)(2) and driving with "any amount of cannabis in the blood" under Section 3802(d)(1)(i)?

3. Whether trial court erred in denying a motion to suppress the evidence gathered as a result of involuntary statements made on Pennsylvania Form DL-26B, which pertains to legal consent to withdraw blood, to support the charges of "any amount of cannabis in the blood" under Section 3802(d)(1)(i)?

4. Whether trial court abused its discretion in considering solely the lay person opinion testimony of a police officer to establish

---

[4] Appellant complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

impaired driving under the influence of marijuana under Section 3802(d)(2)?

5. Whether an admitted "oversight" in the chain of custody records of laboratory testing of a specific blood vial goes directly against reliability and admissibility of the evidence to support the crime of "any amount of cannabis in the blood" under Section 3802(d)(1)(i)?

6. Whether trial court committed reversible error in not granting [Goldman's] motion under **Brady** . . . for exculpatory materials as pertained to known and material errors and "oversights" in the chain of custody of blood vials subject to laboratory testing?

Appellant's Brief at 6-7 (emphases omitted).

Appellant's first issue challenges the sufficiency of evidence supporting his conviction of DUI under Section 3802(d)(2). **See** Appellant's Brief at 26.

Our standard of review is well settled:

[We must determine] whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Hutchins**, 42 A.3d 302, 306–07 (Pa. Super. 2012) (punctuation and citations omitted).

Section 3802(d)(2) of the Motor Vehicle Code prohibits an individual from driving, operating or being in "actual physical control of the movement of a vehicle" when:

> The individual is under the influence of a drug or combination of drugs **to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle**.

75 Pa.C.S. § 3802(d)(2) (emphasis added).

Here, Appellant contends the evidence presented by the Commonwealth was insufficient to demonstrate that he was under the influence of marijuana to a degree that he was **unable to safely operate** his vehicle. *See* Appellant's Brief at 28. He emphasizes that the "[m]ere consumption of marijuana . . . does not create a *per se* presumption of impaired driving." *Id.* at 29. Appellant maintains that neither of the troopers who stopped his vehicle testified that he was driving in an unsafe or impaired manner. *Id.* at 33. Rather, he insists his conviction was based upon the troopers' "lay person opinion testimony that . . . recent consumption of marijuana itself and alone, and no other attendant factors establishes impaired ability to drive per se." *Id.* at 30. Although Appellant recognizes the Commonwealth presented expert testimony on this issue, he contends the expert "opined that a regular user of marijuana will most likely be able to safely operate a motor vehicle under the influence of even large copious amounts of cannabis in the blood, due to tolerance." *Id.* at 35.

Upon our review of the record, we conclude no relief is warranted. Appellant is correct that neither of the troopers testified that he was driving in an unsafe manner at the time of the stop. However, he downplays the other evidence supporting the verdict, namely the testimony of the Commonwealth's forensic toxicology expert, Dr. Roy Cohn, as well as his failure of several field sobriety tests.

Dr. Cohn opined that based on the amount of marijuana in Appellant's system at the time of the blood draw, and his observation of the mobile video recording of the vehicle stop, Appellant "was under the adverse effects of marijuana to the extent that he was unsafe to operate a vehicle safely on the highway." N.T., 11/4/20, at 190. The trial court "specifically credited the testimony of Dr. Cohn." Trial Ct. Op., 4/1/21, at 75. Moreover, Trooper Slavin testified that during all three of the field sobriety tests he performed, Appellant "displayed signs of impairment." ***Id.*** at 47. ***See id.*** at 43-46 (trooper explained (1) during "modified Romberg" test, when Appellant was directed to count for 30 seconds while closing his eyes, tilting his head back, and standing with his hands to his side, he was "swaying" and leaning "further and further back" and counted for only 10 to 12 seconds; (2) during "walk-and-turn" test, Appellant "was swaying," did not "touch heel-to-toe" on the steps back, and raised his arms to "assist with balance[;]" and (3) during the "one-leg stand" test, Appellant "was again swaying, . . . using his arms for balance, and he put his foot down before instructed to do so."). Thus, regardless of the fact the state troopers did not **observe** Appellant driving in an unsafe

manner prior to the stop, the evidence presented by the Commonwealth was sufficient to support the verdict. Indeed, pursuant to Section 3802(d)(2), an individual may be convicted of DUI if he is under the influence of drugs to a degree which impairs, not only his ability to safely drive the vehicle, but also to "operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(d)(2). Accordingly, Appellant's first claim fails.

Appellant's next two issues challenge the trial court's denial of his suppression motion. Our standard of review of an order denying a pretrial suppression motion is well-settled:

> [We] consider only the Commonwealth's evidence and so much of the defense's evidence as remains uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, . . . where the appeal . . . turns on allegations of legal error, the suppression court's conclusions of law are not binding as it is [the appellate court's] duty to determine if the suppression court properly applied the law to the facts.

*In Interest of A.A.*, 195 A.3d 896, 901 (Pa. 2018) (internal citations and quotation marks omitted). Our scope of review is limited to "the evidence presented at the suppression hearing." *Commonwealth v. Wright*, 255 A.3d 542, 548 (Pa. Super. 2021).

In his second claim, Appellant alleges that officers did not have reasonable suspicion or probable cause to conduct a field sobriety test or effectuate an arrest. *See* Appellant's Brief at 40. He maintains the officers

"suspicion of impaired driving" "was solely due to [the] smell of burnt marijuana and . . . [Appellant's] 'bloodshot' eyes[.]" *Id.* at 41.

Recently, our Court stated that plain smell alone may not give officer's probable cause of criminal activity. *See Commonwealth v. Barr*, 240 A.3d 1263, 1287 (2020), *appeal granted,* 252 A.3d 1086 (Pa. 2021) ("The odor of marijuana alone, absent any other circumstances, cannot provide individualized suspicion of criminal activity when hundreds of thousands of Pennsylvanians can lawfully produce that odor"). However, we also stated "it is a factor that can contribute to a finding of probable cause, . . . assuming some other circumstances supply more individualized suspicion that the activity is criminal." *Id.*

Here, Trooper Slavin testified that he smelled "marijuana emanating" from Appellant's vehicle. N.T., 7/28/20, at 56. After Trooper Slavin told Appellant he smelled marijuana, Appellant admitted to Trooper Slavin that "he smoked . . . [3] to [4] hours ago." *Id.* at 57. We agree with the trial court's conclusion that Appellant's admission coupled with Trooper Slavin's observation of Appellant's bloodshot eyes gave the officer reasonable suspicion to suspect Appellant was under the influence of marijuana while driving. Trial Ct. Op. at 58. Trooper Slavin then administered field sobriety tests. N.T., 7/28/20, at 58. According to the trooper, Appellant exhibited multiple "indicators" of impaired driving and "failed" multiple sobriety tests. *Id.* at 62-63. The trial court concluded that at this point, Trooper Slavin had probable cause to arrest Appellant. Trial Ct. Op. at 58. This determination is

supported by the record and accordingly, no relief is due. **See In Interest of A.A.**, 195 A.3d at 901.

In Appellant's third issue, he argues the trial court erred in denying his motion due to the involuntary statements given *via* Pennsylvania Form DL-26B. **Id.** at 44. Appellant asserts the Commonwealth "never established [ ] 'when and how' [Appellant's] signature [on Form DL-26B] was actually obtained." **Id.** at 47. Further, Appellant contends his "mere signature" on the form did not establish officers obtained knowing, willing and intelligent consent for the blood draw.[5] **Id.** at 47-48.

This Court has stated:

> The standard for measuring the scope of a person's consent is based on an **objective** evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the

---

[5] Appellant does not raise a claim under **Birchfield v. North Dakota**, 579 U.S. 438 (2016), which applies to situations where "a defendant's consent is obtained based upon the threat of additional criminal penalties if the blood test is refused." **See Commonwealth v. Gaston**, 239 A.3d 135, 141 (Pa. Super. 2020).

Moreover, if Appellant had raised such a claim, he would not be entitled to relief under **Birchfield**. Trooper Slavin's testimony established he read the DL-26B form to Appellant "verbatim" and did not include any reference to additional or enhanced criminal penalties. N.T., 7/28/20, at 64, 81-83; **see Commonwealth v. Smith**, 177 A.3d 915, 921-22 (Pa. Super. 2017) (finding **Birchfield** inapplicable where DUI motorist was not advised that she would be subject to enhanced criminal penalties if she refused to submit to a blood test).

process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Commonwealth v. Evans*, 153 A.3d 323, 328 (Pa. Super. 2016) (emphasis added; citation omitted).

In the instant case, Trooper Slavin indicated he "read [Appellant] the DL-26[B form] verbatim requesting [ ] a blood draw[.]" N.T., 7/28/20, at 64. Appellant was "calm and cooperative" and gave no "indication that he did not want to sign [the form] or cooperate[.]" *Id.* at 66. Trooper Slavin testified he did not "indicate to [Appellant] that he should or should not sign [the] form[.]" *Id.* at 67, 81-83. Before arriving at the hospital, Trooper Slavin obtained "verbal consent" to the blood draw and after arrival, Appellant signed the form. *Id.* at 83, 85. The trial court found Trooper Slavin's testimony to be credible and concluded Appellant's consent was voluntary. *Id.* at 121. As this determination is supported by the record, we agree with the trial court's determination. *See In Interest of A.A.*, 195 A.3d at 901; *see Evans*, 153 A.3d at 328. No relief is due.

Next, Appellant argues that the trial court erred by solely relying on the troopers' "lay [ ] opinion" testimony that Appellant was not able to safely drive his vehicle. Appellant's Brief at 49. This issue is waived for failure to raise it in his concise statement. *See* Pa.R.A.P. 1925(b)(4)(vii) (issues not included in the 1925(b) statement are waived); *see also Greater Erie Industrial Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) ("it is no longer within this Court's discretion to ignore

the internal deficiencies of Rule 1925(b) statements"); **see also** Appellant's Pa.R.A.P. 1925(b) Statement, 12/2/20.

In his fifth claim, Appellant alleges the trial court erred admitting Appellant's toxicology report due to "admitted 'oversight' in the chain of custody[.]" Appellant's Brief at 51. He argues the present scenario is distinguishable from **Commonwealth v. Hess**, 666 A.2d 705 (Pa. Super. 1995), where the trial court held blood test results were "tainted" due to "an error in the chain of custody[,]" but ultimately constituted harmless error. **Id.** Appellant maintains that here, "the error was not harmless because the sole evidence relied upon to establish 'any amount of cannabis in the blood'" came from this test. **Id.** at 52. Appellant asserts the Commonwealth was required to "make a more detailed and probative showing that the known errors in the chain of custody were harmless and did not implicate the actual samples tested[.]" **Id.** at 53.

Our standard of review in evidentiary matters is limited to an abuse of discretion:

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility.

*Commonwealth v. Gonzalez*, 112 A.3d 1232, 1236 (Pa. Super. 2015) (citations omitted).

This Court has previously stated:  "Chain-of-custody refers to the manner in which evidence was maintained from the time it was collected to its submission at trial[.]"  *In re D.Y.*, 34 A.3d 177, 185 (Pa. Super. 2011) (citation omitted), *appeal denied*, 47 A.3d 848 (Pa. 2012).

Here, Dr. Cohn testified extensively to the chain of custody in this case, concluding "the chain of custody was proper [and] proper procedures were followed."  N.T., 11/4/20, at 166-68; 182-85; 215-24, 227-33.  While Dr. Cohn acknowledged an "oversight" in the report, he explained "it makes no difference in the analyses" and it was not a "material defect in [the] chain of custody[.]"  *Id.* at 210-11; 229, 231.  The trial court again found Dr. Cohn's testimony to be credible and concluded that "even if" Appellant raised a credible challenge to the chain of custody, it would, like *Hess*, constitute harmless error.  Trial Ct. Op. at 78.  We decline to find an abuse of discretion and thus, do not disturb the trial court's determinations on appeal.  *See Gonzalez*, 112 A.3d at 1236.  No relief is due.

For his final issue, Appellant claims that the trial court erred in denying his *Brady* motion "request[ing] . . . to inspect the laboratory results containing 'oversights' in the chain of custody in order to probe the reliability and admissibility of the specific test results presented against [Appellant]." Appellant's Brief at 57.  Appellant asserts the oversight found in his report is "not just a 'coincidence' . . . but [a] serious and problematic proof of potential

- 13 -

issues and mistakes at this laboratory." ***Id.*** at 56. Appellant insists that reports from unrelated cases "containing 'oversights' . . . would certainly fall within the definition of potentially 'exculpatory materials' known to the" Commonwealth. ***Id.*** at 56.

A ***Brady*** violation presents a question of law before this Court and, therefore our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Bagnall***, 235 A.3d 1075, 1084 (Pa. 2020) (citation omitted). Regarding ***Brady*** issues, we have previously explained:

> To succeed on a ***Brady*** claim, a defendant must show that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. The defendant carries the burden to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. Additionally, the evidence at issue must have been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.
>
> * * *
>
> ***Brady*** does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses, nor does ***Brady*** require the prosecution to disclose every fruitless lead considered during a criminal investigation. The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty does extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. ***Brady*** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources.

- 14 -

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1061-62 (Pa. Super. 2019) (citations and punctuation omitted), *appeal denied*, 216 A.3d 1029 (Pa. 2019).

Here, Appellant makes vague assertions that if allowed to examine unrelated criminal reports from the laboratory, he would find oversights amounting to exculpatory evidence. This assumption is based on Appellant examining an additional report with an "exactly similar 'oversight[.]'" Appellant's Brief at 56. We agree with the trial court's reasoning that Appellant "attempted unsuccessfully to exploit [ ] a minor delay in recording a step in [his toxicology report]" in an attempt to "undermine the credibility" of the report as a whole. Trial Ct. Op. at 76. With such a sparse argument, Appellant has not met his burden in establishing that this evidence was favorable or exculpatory. *See Sandusky*, 203 A.3d at 1061. Rather, the documents Appellant requested would "merely form the groundwork for possible arguments or defenses[.]" *See id.* at 1062. Therefore, under, *Brady*, disclosure of information at issue is not necessary. Accordingly, we agree with the trial court's determination that this claim is meritless, and no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2022